IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUFFOLK TANKERS, LTD., | ) | CASE NO. 1:00 CV 3062 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| EVANSTON INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff/Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ADVANCED POLYMER SCIENCES, | ) | **AND ORDER** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

This matter arises out of claims by plaintiff Suffolk Tankers Ltd. ("Suffolk") against defendant Advanced Polymer Sciences, Inc. ("APS") for damages allegedly caused by the application of an APS product to two cargo tanks in a ship owned by Suffolk.[1]  In a manner which is a major part of the controversy in this action, APS entered into a settlement with Suffolk confessing liability and assigning to Suffolk its rights to pursue a claim with its insurer, plaintiff/intervenor Evanston Insurance Company ("Evanston").[2]

---

[1] ECF # 84 (Notice of Manual Filing of Joint Exhibits [hereinafter "Joint Exhibit"]); Joint Exhibit 5, Joint Exhibit 8.

[2] Joint Exhibit 17.

Subsequent to receiving notice of Suffolk's lawsuit, but before settling with Suffolk, APS went into receivership,[3] and any rights it may have had against Evanston are now being asserted, pursuant to the assignment, by Suffolk.  For clarity, APS will be identified here as taking those actions it originally took or holding those rights it originally had, so that Suffolk may also be clearly identified as being in its original position.  APS ceased participation in this matter when the Court gave its counsel leave to withdraw.[4]

## II.

The parties have entered into joint stipulations of fact;[5] provided a substantial record of documents, affidavits, and depositions;[6] have briefed numerous motions; and have participated in oral argument.[7]

Because the total record is lengthy, the Court will not attempt to summarize it.  The relevant facts will be stated as required.

## III.

The matter now before the Court consists of cross-motions for summary judgment[8] filed by Suffolk and Evanston.  Both parties, in briefs and in oral argument, contend that this

---

[3] ECF # 83, ¶40.

[4] *Id.*, ¶45.

[5] *Id.*

[6] *Id.*, ¶5.

[7] Transcript of Oral Argument of September 13, 2005 (09/13/05 Transcript) at __.

[8] ECF # 86; ECF # 87.

matter is proper for summary judgment and that no open issue of material fact remains. For the reasons that follow, the Court concurs that the matter can be decided on summary judgment under the appropriate standards.[9]

Both motions, together the responses and motions in opposition, argue numerous issues. However, because each party raises an issue capable of resolution by summary judgment and dispositive of the matter, the Court will address only those issues.

## IV.

In Suffolk's case, the linchpin argument is whether the lapse of 369 days between when Evanston first received a demand for coverage and defense from APS and when Evanston finally tendered an offer of a defense with reservation of rights[10] *per se* created a breach of the insurance contract, or estops Evanston from asserting any contractual defenses to liability, thereby permitting APS to settle the case without cooperating with Evanston and binding Evanston to that settlement.

Evanston's key issue is whether APS's failure to cooperate, as evidenced by executing a settlement subsequent to Evanston's tender of a defense with reservation of rights but without notice to Evanston, breached the contract and so permits Evanston to deny coverage.

The parties agree in this diversity case that Ohio law governs.[11]

---

[9] *E.g., Weigel v. Baptist Hosp. of East Tenn.,* 302 F. 3d 367, 375 (6th Cir. 2002).

[10] Joint Exhibit 5 (Notice by APS to Evanston dated Nov. 28, 2001 of lawsuit by Suffolk, demanding indemnification and a defense); Joint Exhibit 13 (Notice by Evanston to APS dated Dec. 02, 2002 tendering a defense with a reservation of rights).

[11] Joint Exhibit 1, p. 9.

Suffolk offers a narrow and novel argument.  Ohio law is clear, on the one hand, that an insurer's rejection of a demand for defense will permit an insured to proceed to settle a claim on its own and, if coverage is established, to bind the insurer to that result.[12]  There is also clear authority in Ohio that tendering a defense with a reservation of rights is not, in itself, equivalent to a denial of defense.[13]

In the present case, the parties have stipulated that "Evanston never advised APS that it was denying coverage for the claims made by Suffolk."[14]  Further, the uncontested facts are that, after that 369-day period, in December, 2002, Evanston did tender an offer of defense with a reservation of rights;[15] such an offer of defense occurred prior to Suffolk entering into a settlement of the underlying claim;[16] and this tender of defense was never rejected by Suffolk nor rescinded by Evanston.

---

[12] *Sanderson v. Ohio Edison Co.,* 69 Ohio St. 3d 582, 582-83, 635 N.E.2d 19, 21 (1994).  "[W]here an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract."

[13] *Motorists Mut. Ins. Co. v. Trainor,* 33 Ohio St. 2d 41, 294 N.E.2d 874, 875 (1973).  "[A]n insurance company . . . may defend in good faith without waiving its right to assert at a later time the policy defenses it has, provided that it gives its insured notice of any reservation of rights."

[14] ECF # 83, ¶37.

[15] *Id.,* ¶38.

[16] *Id.,* ¶¶38, 42.

-4-

Furthermore, in 2004 Evanston paid Suffolk's defense costs in this matter[17] and, as part of the settlement on those fees, APS agreed that it "was not prejudiced in its defense by any action *or inaction* of Evanston."[18]

In the face of these facts, Suffolk now claims that the mere presence of the 369-day period between the demand and the tender of defense, standing alone, creates an irreparable breach of the contract of insurance that must nullify Evanston's December, 2002 tender of defense and ratify APS's February, 2003 conclusion of a settlement with Suffolk, done without notice to Evanston.[19]

Ohio law requires that four elements be present to sustain a claim of breach of contract. A plaintiff must prove: "(1) the existence of a binding contract or agreement; (2) that he performed his contractual obligations; (3) that the other party failed to perform its contractual obligations without legal excuse; and (4) he suffered damages as a result of the breach."[20]

---

[17] Id. ¶47.

[18] Joint Exhibit 18, p. 3 (emphasis added).  The parties have contested whether another portion of this 2004 settlement agreement concerning fees, wherein APS waived its rights to pursue any claim against Evanston for anything "arising out of or in any way relating to. . . [Evanston's] duty to defend the legal actions identified in this release existing by virtue of the insurer/insured relationship between APS and Evanston," should have any effect here.  Suffolk asserts that, because APS assigned its rights to Suffolk in 2003, Evanston cannot here rely on any waiver it received from APS in 2004.  The Court need not address that issue since the admission by APS that it was not prejudiced in its defense by anything Evanston did or didn't do is, for purposes of this matter, simply considered as an uncontested fact, without further consideration of whether any subsequent waiver has any present effect.

[19] ECF # 86, pp. 24-29.

[20] *Hicks v. Bryan Med. Group, Inc.*, 287 F. Supp. 2d 795, 803 (N.D. Ohio 2003).

Actual damages are "an essential element of a breach of contract claim."[21]    Contracts of insurance are to be interpreted by the same rules governing all other contracts.[22]    Summary judgment in a case for breach of contract is appropriate where no evidence of actual damages, an essential element of a breach, is present in the record.[23]

Misconstruing these principles is at the core of Suffolk's present motion for summary judgment.  It initially concedes that there is no case authority in Ohio "discussing such a long delay in the context of an insured's duty to defend."[24] Then Suffolk, citing a welter of cases from many states considering whether the passage of various amounts of time before an insurer responded to a demand for defense was "reasonable," argues that since there is no case to show that a 369-day period "could somehow be found reasonable," this Court should find such a period to be *per se* unreasonable as a matter of law.[25]

The key aspect to the cases relied upon by Suffolk dealing with when an insurer's delay in providing a defense is "unreasonable" under its contractual duty to defend remains a showing of actual damage or prejudice flowing from the delay. As noted, such a factual showing is an essential element of any claim of breach.

---

[21] *Oak Rubber Co. v. Bank One, N.A.*, 214 F. Supp. 2d 820, 831 (N.D. Ohio 2002).

[22] *Hybud Equip. Corp. v. Sphere Drake Ins. Co. Ltd.,*  64 Ohio St. 3d 657, 665, 597 N.E.2d 1096, 1102 (1992).

[23] *Doner v. Snapp*, 98 Ohio App. 3d 597, 601, 649 N.E.2d 42, 44 (1994).

[24] ECF # 86, p. 24.

[25] *Id.*, p. 25.

The cases cited by Suffolk, therefore, don't turn on the passage of a given amount of time before an insurer tenders a defense, since some find a breach arising after periods of as little as three months; rather, the key finding is whether the elapsed time, of whatever length, actually caused a proved harm to the insured.  Here, the issue is whether Suffolk has adduced any evidence of actual harm flowing from Evanston's action in taking 369 days to tender its defense.

As the record shows, Evanston paid APS's defense fees.[26]  At the point it tendered its defense with a reservation of rights, APS's attorney told Evanston that the underlying matter was ready for trial and was defensible.[27]  APS has stipulated that nothing Evanston did or didn't do prejudiced its defense.[28]  There is nothing to support a finding that APS was harmed by the passage of time before Evanston tendered its defense.  Without such a showing, APS cannot maintain a claim for breach on the assertion that the mere passage of time, without actual damages, is "unreasonable."

Somewhat belatedly, Suffolk contends that a single expression of concern by APS's counsel, made after receiving the offer of a defense with a reservation of rights, that "APS will

---

[26] ECF # 83, p. 47.

[27] Joint Exhibit 14, p. 1. "Discovery is complete and I am ready for trial. I believe this case is very defensible for the reasons set forth below."

[28] Joint Exhibit 18, p. 3. "APS acknowledges that for all claims which it provided Evanston notice of, it was represented by counsel of its choice and, except for attorney fees and expenses incurred, it was not prejudiced in its defense by any action or inaction of Evanston."

continue to have a potentially uninsured exposure"[29] is sufficient to establish that APS was prejudiced.[30]

Again, the conclusion of APS itself, as expressed in the fee agreement, was that it was not prejudiced.  Further, the act of simply going forward under a defense with a reservation of rights, which is what counsel was referring to as creating the "potential" for uninsured exposure, cannot, by law, be determined to be *per se* prejudicial to an insured since that posture is specifically endorsed in Ohio law and held to be a defense in good faith.[31]

Moreover, when Evanston tendered a defense with reservation of rights in December, it adopted precisely the defense posture that had previously been expressly suggested to it as "the proper procedure under Ohio law" in April by APS's counsel.[32]

Beginning with its tender of a defense, Evanston then began actively discussing with APS's defense counsel how to go forward.  Evanston's attorney, after being made aware for the first time by APS's counsel of "the potential for APS to admit liability and assign its rights to

---

[29] Joint Exhibit 14, p.2.  "Unless Evanston is able and willing to settle the case within its policy limits, APS will have a potentially uninsured exposure going into trial."

[30] ECF # 94, p. 8.

[31] *Motorists Mut. Ins. Co.*, 33 Ohio St. 2d at 41, 294 N.E.2d at 875.

[32] Joint Exhibit 10.  "The proper procedure under Ohio law when there is a question of coverage is for the carrier to assume the defense under a reservation of rights."

Suffolk to pursue insurance coverage,"[33] informed defense counsel that "this is not acceptable to Evanston."[34]  Approximately a week later, Evanston again raised the same point.[35]

It is undisputed that APS did not inform Evanston prior to entering into the settlement with Suffolk in February, 2003 that APS confessed liability.  In fact, APS did more than just act without informing Evanston; it made sure that Evanston could not know about the settlement by also keeping the court-appointed receiver in the dark about Evanston's presence in the case.[36] The receiver, in an uncontested statement in this record, indicated that, had he known Evanston was in the case, he would have "most certainly" felt bound to discuss any settlement with it prior to executing any such settlement.[37]

Confronted with powerful evidence that it incurred no harm from Evanston's alleged breach and so cannot maintain a claim of breach, Suffolk attempts to keep that argument alive by asserting that because the stipulation that it was not prejudiced in its defense by Evanston was entered into as part of an agreement to pay defense attorney fees it should have no effect here on Suffolk's claim of breach.[38]  The Court finds this analysis unpersuasive.

---

[33] Joint Exhibit 14, p. 3.

[34] ECF # 88, p. 74, Affidavit of Cheryl P. Vollweiler.  This affidavit is not contested. In fact, it is also cited as evidence by Suffolk in ECF # 90, p. 13.

[35] ECF # 88, p. 75.

[36] ECF # 83, ¶43.

[37] ECF # 88, p. 32.

[38] 09/13/05 Transcript at ___;  *see also* ECF # 94, p. 9 and discussion at footnote 8, *supra.*

Initially, the fact stipulations in the fee settlement contain no such limitations to that effect.  Further, the fee settlement is between the same parties and arises out of the same proceeding as this matter.  Moreover, the fee settlement in 2004 occurred well after the 369-day period preceding Evanston's tender of defense in 2002.  Presumably, APS would have been well aware of any damages it suffered as a result of a breach by Evanston when it signed an agreement that Evanston had done nothing prejudicial to its defense.  Finally, any finding that APS suffered no damage from Evanston's alleged breach is well-supported by the record and does not rest exclusively or even substantially on this admission.

On the other hand, APS's actions in concluding a settlement based on a confession of liability, done after Evanston had agreed to undertake a defense, but without notifying Evanston and in contravention of both the direct terms of the contract[39] and Evanston's explicit instructions, are clearly prejudicial to Evanston.

Evanston must, under Ohio law, establish all four elements of a breach, including damages, to prevail on summary judgment.[40]  The record here establishes that, notwithstanding any issues of policy coverage, enforcing the settlement entered into by APS on Evanston would, at the very least, bar Evanston from opposing any amount Suffolk may claim as damages.[41]

---

[39] Joint Exhibit 1, p. 7.  "The Insured shall not, except at his own cost, make any payment, admit any liability, settle any claims, assume any obligation or incur any expense without the written consent of the Company."  *See also* Joint Exhibits 2 and 3 for similar language in policies for succeeding years.

[40] *Hicks*, 287 F. Supp. 2d at 803.

[41] Joint Exhibit 17, ¶7.

Suffolk in its motion for summary judgment claims damages in the amount of $920,000.[42]  Even if Suffolk should prevail on every claim of policy coverage, Evanston would still be damaged under this agreement by having to accede to damage amounts it could not challenge and which now are substantially greater than the damage amounts initially claimed.[43] Accordingly, Evanston has established damages flowing from APS's failure to cooperate.

Under such circumstances, Ohio law permits Evanston to hold APS liable for breach of its contractual duty to cooperate in the defense of its claims, thus barring any recovery under the policy for any underlying claims.[44]

Suffolk essentially concedes that a finding of breach against it would do as much. However, it attempts to negate the consequences of its actions in settling the matter by recasting its prior argument that the 369-day period was a breach by Evanston into what is, at its root, an equitable estoppel argument.

Suffolk in this argument asserts that Evanston's creation of the 369-day period must now "preclude[] [it] from asserting any policy condition, including violation of the cooperation clause . . ." that would bar coverage.[45]

---

[42] ECF # 86, pp. 29-30.

[43] *Cf. id.*, Joint Exhibit 4.

[44] *Westfield v D.C. Builders,* No. 82970, 2004 WL 309272 (Ohio App. Feb. 19, 2004). "Because Westfield did not refuse to defend Builders at any point in the underlying action, Builders was not at liberty, and in fact barred from, entering into a settlement with Schilling without Westfield's knowledge or consent.   Indeed, Builder's breached the contract with Westfield by failing to 'cooperate' in the 'settlement' of the underlying action." *Id*. at *8.

[45] ECF # 90, p. 15.

-11-

As already discussed, the 369-day period resulted in no prejudice to Suffolk and thus created no breach by Evanston.  It cannot now be construed as giving rise to an estoppel that precludes Evanston from asserting its rights under the contract by simply changing the words of the argument.

Estoppel, like breach of contract, requires a finding of actual harm to the party seeking to assert it.[46]  APS's failure to produce any evidence that it was harmed by Evanston's actions before the tender of defense now precludes it from estopping Evanston from employing its remedies for APS's clear failure to cooperate after that tender was made under the contract.

## V.

Accordingly, the Court finds that the 369-day period between the demand for a defense and the tender of defense with a reservation of rights, which APS here has failed to show resulted in any harm to it and previously conceded was not prejudicial, created, in itself and as a matter of law, no breach by Evanston.

The Court further finds, however, that APS was clearly bound under the contract to have given prior notice to Evanston of its intention to enter into a settlement as part of its duty to cooperate in the defense of its claim once Evanston had tendered a defense.  Its failure to do so damaged Evanston and expressly breached the contract.  Since APS may not estop Evanston from employing its contractual rights to require cooperation in defending the claim, Evanston may here exercise its rights to deny coverage and refuse to be bound by the settlement.

---

[46] *Minnesota Mining & Mfg. Co. v. Blume*, 533 F. Supp. 493, 517 (S.D. Ohio 1979). A party asserting an estoppel must prove, *inter alia*, that the party sought to be estopped did some act "to his injury or prejudice."

These findings and conclusions mean that the arguments adduced here by the parties as to whether a potentially covered event arose during or fell outside of the coverage period of the policies, or whether the claims asserted are covered or excluded by various policy provisions, need not be reached.

## VI.

Suffolk's motion for summary judgment is hereby denied. Evanston's motion for summary judgment is hereby granted.

IT IS SO ORDERED.

Dated:  September 28, 2005                    s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

-13-